PACKER CORPORATION, a Michigan
Corporation, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. No. 17254.

United States District Court
E. D. Michigan, S. D.

Dec. 30, 1958.

Cook, Beake, Miller, Wrock & Cross, Detroit, Mich., for plaintiff.

Fred W. Kaess, Elmer L. Pfeifle, Jr., Detroit, Mich., for defendant.

O'SULLIVAN, District Judge.

This Cause has been submitted on a stipulation of facts which the Court adopts as its Findings of Fact.

The following facts, however, should be recited herein for a better understanding of the Court's conclusions of law. This is a suit by the plaintiff, the Packer Corporation, to recover from the United States of America the sum of $19,460.68 which it paid, and which it claims was illegally assessed against it as excess profits taxes for the tax year beginning May 1, 1953, and ending April 30, 1954. The assessment arose from the disallowance to plaintiff of the use, as a new corporation in its first or second taxable year, of the five percent tax rate provided by Section 430(e) (1) (A) of the Internal Revenue Code of 1939, as amended, 26 U.S.C.A. Excess Profits Taxes, § 430(e), (1) (A). This rate was available to a new corporation in its first or second taxable year, provided it was not disqualified therefor by the provisions of Section 430(e) (2) (B) (ii) of the Code. The effect of the latter pro-

vision was that such new corporation would be considered to have been in existence and to have had taxable years for any period of time during which there had been in existence another corporation controlled by a group of not more than four persons that also controlled the taxpayer corporation, and which other corporation was, "engaged in a trade or business substantially similar to the trade or business of the taxpayer during the taxable year."

The plaintiff corporation was incorporated in Michigan on April 13, 1953, under the name Superior Pontiac-Cadillac, Inc., (its name was changed to Packer Corporation on May 15, 1956).

Another Michigan corporation, the Packer Pontiac Company, was incorporated in Michigan on October 25, 1946, and was in existence and conducted its business up to and including the taxable year of plaintiff corporation involved in this litigation. Plaintiff corporation and Packer Pontiac Company were controlled by members of the Packer family in such manner as to prevent the plaintiff corporation from qualifying for the said special tax treatment if, in fact, the Packer Pontiac Company "was engaged in a trade or business substantially similar to the trade or business of the taxpayer (plaintiff) during the taxable year".

It is conceded that the sole issue in this case is whether or not the Packer Pontiac Company was, in fact, engaged in a trade or business similar to the trade or business of the taxpayer.

The Packer Pontiac Company had its principal place of business in the City of Detroit and its business was the operation of an automobile dealership, selling, servicing and repairing new and used cars, parts and accessories, under a franchise granted by General Motors Corporation to sell new Pontiac automobiles. The principal place of business of plaintiff corporation was the City of Flint, Michigan, and its business was the operation of an automobile dealership, selling, servicing and repairing new and used cars, parts and accessories, under a franchise granted by the General Motors Corporation to sell both new Cadillac and new Pontiac automobiles.

Both of these corporations had contracts with the General Motors Corporation. The contract of the Packer Pontiac Company (the Detroit concern) related to Pontiac automobiles. The plaintiff corporation had two contracts with General Motors Corporation, one covering the sale of Pontiac automobiles and the other the sale of Cadillac automobiles. All three of these contracts were substantially identical in terms, except that the contract of the Packer Pontiac Company (Detroit) set forth an obligation on its part as the dealer company to develop sales of Pontiac automobiles in the City of Detroit and certain defined adjoining areas, and the contracts held by plaintiff corporation set forth an obligation on its part as the dealer company to develop sales in the City of Flint and the County of Genesee, in which the City of Flint is located. None of the contracts, however, restricted these dealers from selling outside of the area in which these companies were obligated to develop sales.

The stipulation of facts discloses that upwards of ninety percent of the sales of the Detroit concern were made within the area described in its contract with General Motors Corporation and the Flint concern (plaintiff corporation) sold upwards of ninety percent of the cars sold by it within the area described in its contract. A fair review of the stipulation of facts discloses that the plaintiff corporation and the Packer Pontiac Company were, within their respective spheres of operation, conducting businesses that were substantially the same. They differed only in the fact that the plaintiff corporation handled Cadillac automobiles as well as Pontiacs and in the areas of Michigan within which they operated. Flint is approximately sixty miles from the City of Detroit. The stipulation of facts does disclose that each of these corporations sold automobiles in the area in which the other did business, although these sales were insignificant. The Court does not feel this

fact is of importance on the issue in question.

Plaintiff corporation contends that it should be held not to have been engaged in a business substantially similar to that of the Detroit concern. The brief of the plaintiff reviews the history of the Code section involved in this case, and emphasizes the intention of Congress to permit new corporations to go through their first years of operation with some protection against the imposition of heavy tax burdens upon them from the Excess Profits Tax Act. The brief quotes from a Senate Finance Committee hearing as follows:

"Your Committee believes that despite the need for revenue in the present emergency, every possible effort must be made to assure the creation and development of new techniques, new processes, and new corporations. This is desirable if the ability of this country to produce is to continue to expand.

"As a result, it is believed necessary to give assurance to new corporations in their initial period of development that the excess profits tax will not work undue hardship upon them. Section 501 of your committee's bill does this by providing a series of special ceiling rates available only to new corporations." U. S.Code, Congressional and Administrative Service (1951) Vol. 2, Page 2045.

This Court, however, is of the opinion that it is not necessary to resort to hearings of the Senate Finance Committee to find the meaning of Congress in enacting the Section of the Code involved here. This Court thinks the mentioned code section is not ambiguous and it is not necessary to seek for Congress' meaning by going outside the language Congress employed in enacting it.

These two corporations were automobile dealers, selling cars manufactured by the General Motors Corporation and under contracts identical in terms except that plaintiff corporation was to sell

Cadillac cars as well as Pontiacs and the principal areas of activity of the two corporations would be Flint and Detroit, respectively. Neither was prohibited from operating within the territory of the other. The record discloses that both corporations sold new automobiles to each other and to other new car dealers. Plaintiff corporation bought parts and tires from the Detroit concern. One of the facts stipulated was that one George A. McKay, who had been sales manager for the Detroit concern, acquired twenty-five percent of the stock of plaintiff corporation with money borrowed from a bank and with this borrowing guaranteed by a member of the Packer family. He became Vice-President and General Manager of the Flint concern. This Court does not feel that these facts are of special significance in the determination of the issue here. It probably should be mentioned that during the taxable year the plaintiff corporation's sales of new automobiles were divided between Pontiacs and Cadillacs; sixty-two and seven-tenths percent thereof were Pontiacs and thirty-seven and three-tenths thereof were Cadillacs.

Plaintiff corporation urges that because it began its operation in new territory wherein it had to develop new marketing practices, different than the Detroit concern, that it should not be considered as being in a trade or business similar to the Detroit concern. The plaintiff's brief urges that the marketing area of plaintiff corporation and that of the Detroit concern were as different as though plaintiff located in Chicago or Los Angeles. This might conceivably be true, but that still would not prevent the plaintiff corporation from being found to be engaged in a trade or business substantially similar to the trade or business of the Detroit concern. In enacting the section of the code in question, Congress did not see fit to discuss the marketing areas or locations of corporations, but clearly forbade the use of the preferential tax rate by such a corporation as plaintiff if another corporation, controlled as provided in the statute, was

engaged in a trade or business substantially similar to the trade or business of the taxpayer. This Court thinks the language of this section of the code is clear, and that plaintiff corporation and Packer Pontiac Company of Detroit were, within the meaning of the statute, each engaged in a trade or business substantially similar to that of the other.

A judgment of no cause of action should be prepared and presented for signature.